UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
--------------------------------------------------------------------

|  |  |  |
|---|---|---|
| SEFAC S.A. and SEFAC USA INC., | : | |
| | : | Civil Action No. |
| Plaintiffs, | : | |
| | : | |
| -against- | : | **COMPLAINT** |
| | : | |
| SEFAC, INC., | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant. | : | |

--------------------------------------------------------------------

Plaintiffs SEFAC S.A. and SEFAC USA INC., by its attorneys, Morrison Cohen LLP, Sutton Magidoff LLP and Brown Wynn McGarry Nimeroff LLC, for its Complaint herein against Defendant SEFAC, INC. alleges as follows:

## PARTIES

1.     Plaintiff SEFAC S.A. ("SEFAC S.A.") is a corporation organized under the laws of France, with its principal business office located at 1 Rue Andre Compain, Montherme 08800. SEFAC S.A. was originally founded in 1884 and was dedicated to industry and transport. Among its claims to fame was the manufacturing of rivets used in the construction of the Eiffel Tower.  Since 1970, SEFAC S.A. has designed, manufactured and sold heavy duty column lifts used to raise vehicles.  SEFAC S.A. sells its lift products in the United States and some forty countries throughout the world under the trademark "SEFAC."

2.     SEFAC S.A. owns and uses in commerce the mark SEFAC in connection with its products and services.   SEFAC S.A. owns, among others, the following trademarks and associated common law rights (together, the "SEFAC Marks"):

> (1)    SEFAC (Serial No. 86454978), IC 007 for use on goods and services for "Lifting and handling equipment; vehicle lifts; wheel adaptors; trailer beams; transmission jacks; wheel removers; twin

wheel removers; axle stands; parts and fittings for the aforesaid goods"

(2)     SEFAC (Serial No. 86456432), IC 037 for use on goods and services for "Installation, maintenance and repair services for lifting and handling equipment, vehicle lifts, wheel adaptors, trailers beams, transmission jacks, wheel removers, twin wheel removers, axle stands, parts and fitting for the aforesaid goods"

3.      Plaintiff SEFAC USA Inc. ("SEFAC USA") is a corporation organized under the laws of Delaware, with its principal business located at 30 South 15th Street, 15th Floor, Philadelphia, Pennsylvania.  SEFAC USA Inc. is a wholly owned subsidiary of SEFAC S.A. incorporated on November 13, 2014, and is a licensee and distributor for SEFAC S.A. products in the United States.  SEFAC S.A. formed SEFAC USA Inc. after Defendant unilaterally terminated its distribution agreement with SEFAC S.A.

4.      On information and belief, Defendant SEFAC, Inc. ("Defendant") is a corporation organized under the laws of Maryland, with places of business located at 23 Fontana Lane, Baltimore, Maryland 21237.  Upon information and belief, Defendant has advertised to persons within the State of Pennsylvania and this District, and provides goods and services in Philadelphia, Pennsylvania and elsewhere in the State of Pennsylvania and in this district under the SEFAC Mark.

5.      From at least 2003 until late 2014, Defendant was SEFAC S.A.'s only distributor in the United States.  During this time, Defendant purchased lift products manufactured by SEFAC S.A. and distributed these products by reselling them in the United States.  Upon information and belief, even after unilaterally terminating its distribution agreement with SEFAC S.A. in late 2014, Defendant has continued to market and sell products and services under the SEFAC Marks without license or other authorization or consent from SEFAC S.A., even though said products and services do not originate from SEFAC S.A.

6.     In or about 2006, Defendant fraudulently obtained the ownership of a trademark Reg. No. 2,840,695 for the word mark "SEFAC" in IC 007 (the "SEFAC Registration") by filing a false assignment document with the United States Patent and Trademark Office ("USPTO"). The SEFAC Registration was originally issued May 11, 2004 to Triapt Holdings Limited, which at the time owned both SEFAC S.A. and Defendant.  A copy of the SEFAC Registration is attached hereto as Exhibit A.  The SEFAC Registration was issued for use on the following goods and services:

> HEAVY GARAGE EQUIPMENT, NAMELY, ENGINE BORING MACHINES, AIR COMPRESSORS FOR MACHINES, ELECTRIC HAND-HELD DRILLS, ELECTRIC MOTORS FOR MACHINES, ELECTRIC AND GAS WELDING MACHINES, EXTENSION BARS FOR POWER TOOLS, PNEUMATIC GREASE GUNS, PNEUMATIC HAMMERS, HYDRAULIC TIRE CHANGERS, STANDS FOR HYDRAULIC JACKS, IMPACT WRENCHES, POWER DRIVEN WRENCHES, POWER DRIVE RATCHET WRENCHES, STARTERS FOR ENGINES AND MOTORS, HYDRAULIC PRESSE AND POWER OPERATED GRINDING WHEELS; LIFTING EQUIPMENT, NAMELY, WINCHES AND ELECTRICALLY POWERED ELEVATING WORK PLATFORMS; HANDLING APPARATUSES FOR LOADING AND UNLOADING, NAMELY, ROLLER BRIDGES; ELECTRO-MECHANICAL HOISTS AND LIFTS FOR LAND VEHICLES; MOTORIZED HYDRAULIC ELEVATOR TABLES; HYDRAULIC-ELEVATORS; HYDRAULICALLY AND OTHERWISE POWERED JACKS FOR VEHICLES; TOOLS AS ELEMENTS OF MACHINES FOR REMOVAL OF WHEELS, NAMELY JACKS AND WRENCHES; INDUSTRIAL MACHINE PRESSES, NAMELY, SPRING PRESSES AND EXTRACTION PRESSES; MACHINE SHOP CRANES, NAMELY, POWER-OPERATED LIFTS AND HOISTS, IN CLASS 7 (U.S. CLS. 13, 19, 21, 23, 31, 34 AND 35).

7.     The SEFAC Registration is the subject of a cancellation proceeding currently pending before the USPTO under TTAB No. 92060499 commenced by SEFAC S.A. on December 9, 2014.

### NATURE OF THE ACTION

8.     The instant action arises from Defendant's unlawful misappropriation and infringement of the SEFAC Marks in the United States even after terminating its distribution

agreement with SEFAC S.A.  Plaintiffs bring this action against Defendant for: (i) cancellation of trademark for fraud and deception pursuant to 15 U.S.C. § 1119; (ii) unfair competition and false designation of origin pursuant to Section 43(a) of the Lanham Act; (iii) injury to business reputation and trademark dilution pursuant to 54 Pa. Cons. Stat. § 1124; (iv) deceptive trade practices in violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201 et seq.; and (v) common law unfair competition.  Plaintiffs seek injunctive relief, damages and attorney's fees.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), 1338(a), 1338(b), 1367 and 15 U.S.C. § 1121(a).  Venue is properly laid in this District under 28 U.S.C. §§ 1391(b) and (c).

10.     The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11.     This Court has personal jurisdiction over Defendant since, on information and belief, Defendant (i) transacts business in Pennsylvania and in this district and/or (ii) contracts to supply services or things in Pennsylvania and in this district and/or (iii) causes harm or tortious injury by an act or omission in Pennsylvania and in this district.

## Factual Background

**A.     SEFAC S.A.**

12.     SEFAC S.A. has been a specialty lift manufacturer for more than 40 years, manufacturing and selling heavy duty column lifts used for raising vehicles of all types.  Based in France and originally founded in 1884, SEFAC S.A. began manufacturing and selling its mechanical lift products in approximately 1970, and since then has expanded its sale to more than forty countries including the United States, Canada and Europe.  SEFAC S.A. has through

its decades in the industry established a strong reputation for inventiveness, professionalism and commitment to technology and safety that has enabled it to reach unmatched status in this field.

13.     SEFAC S.A. has used the SEFAC Mark to market and sell its lift products since at least as early as 1970, and in the United States since approximately 1977.  Through its extensive investment and development of its lift products and technologies, SEFAC S.A. has become identified with and known as the source of products and services bearing the SEFAC Mark.

14.     SEFAC S.A. has invested substantially in advertising, marketing and promotional efforts, to promote its products under the SEFAC Mark.  As the result of its consistent use of the SEFAC Mark in these efforts, the SEFAC Mark has generated substantial good will and is well-recognized by the public generally and in the lift industry in particular.

15.     Prior to 2000, SEFAC S.A. was wholly owned by AFE Levage Corporation ("AFE"), also a French company.

16.     Upon information and belief, AFE also owned and incorporated several other subsidiaries for the purpose of acting as distributors for the products manufactured by SEFAC S.A.  Among these entities was Defendant, which was registered as a Maryland corporation on or about March 16, 2001.  At all times, SEFAC S.A. remained the only manufacturing entity for lift products bearing the SEFAC Mark.

17.     On or about January 16, 2001, AFE filed with the USPTO an application for the trademark "SEFAC" (Ser. No. 76193570) in IC 007, for use on goods and services for "Heavy garage equipment, ... stands for hydraulic jacks, ... electro-mechanical hoists and lifts for land vehicles; motorized hydraulic elevator tables; hydraulic-elevators; hydraulically and otherwise

powered jacks for vehicles; tools as elements of machines for removal of wheels, namely, jacks and wrenches; ... machine shop cranes, namely, power-operated lifts and hoists."

18.     In December 2001, AFE transferred, by asset sale, the entirety of its SEFAC lift business to a British company called Triapt Holdings Limited ("Triapt").  As part of the sale, AFE transferred the shares of stock in its subsidiaries to Triapt, including SEFAC S.A. and Defendant.  AFE also assigned to Triapt the rights to the U.S. Trademark application Ser. No. 76193570.  The USPTO issued the SEFAC Registration to Triapt on or about May 11, 2004 under U.S. Reg. No. 2,840,695.

19.     Subsequent to Triapt's purchase of the SEFAC business from AFE, SEFAC S.A. continued to manufacture all of the mechanical lifts for worldwide distribution and to sell these products to Defendant for resale in the United States.

**B.     Triapt Is Liquidated Pursuant to UK Insolvency Law**

20.     In or about 2004, Triapt became unable to pay certain Mortgage Debenture debts. On or about November 17, 2004, administrative receivers (the "Receivers") were appointed to oversee the liquidation of Triapt pursuant to UK Insolvency Law.  As part of the winding up process, the Receivers sold all of Triapt's shares in SEFAC S.A. as well as in the various distributor subsidiaries – including Defendant – which distributed the SEFAC lifts in the United States.

21.     The shares for SEFAC S.A. were transferred pursuant to the terms of a shareholder sale agreement executed on or about April 21, 2005 (the "SEFAC S.A. Shareholder Agreement").  The SEFAC S.A. Shareholder Agreement provided that the Receivers transfer all "such right, title and interest as the Seller [Triapt] may have in the Shares [of SEFAC S.A.]."  A

copy of the SEFAC S.A. Shareholder Agreement is attached hereto as Exhibit B.  The agreement

expressly stated that the sale did not include any other premises or assets, as follows:

> 4  EXCLUDED ASSETS
>
> [I]t is hereby acknowledged and agreed that save for the Shares any premises and/or assets of the Seller are excluded from the sale to the Buyers under this Agreement.

22.     The shares for Defendant were transferred pursuant to the terms of a shareholder

sale agreement executed on or about July 11, 2005 (the "SEFAC INC. Shareholder Agreement").

The SEFAC Inc. Shareholder Agreement provided that the Receivers transfer all "such right, title

and interest as the Seller [Triapt] may have in the Shares [of SEFAC, INC.]"  Upon information

and belief, the form used for the SEFAC INC. Shareholder Agreement was substantially

identical in form and substance to the shareholder sale agreement for SEFAC S.A.

23.     Upon information and belief, the SEFAC INC. Shareholder Agreement did not

include any provision for the transfer of rights to any other assets associated with the SEFAC

business.  In particular, the sale did not include the transfer and assignment of the SEFAC

Registration.   Accordingly, Triapt never assigned the rights to the SEFAC Registration to

Defendant, and Defendant never became the owner of the SEFAC Registration.

24.     Upon information and belief, pursuant to the Insolvency Law of the United

Kingdom, any remaining premises or assets not sold as of the dissolution of Triapt escheated to

the "Crown."  Triapt was fully dissolved by 2009.

**C.     Defendant Fraudulently Assigns Itself The SEFAC Mark Registration**

25.     Upon information and belief, Defendant, which continued as the U.S. distributor

of lifts from SEFAC S.A. after the execution of the SEFAC INC. Shareholder Agreement,

continued to purchase lifts manufactured by SEFAC S.A. and resell them under the SEFAC

Mark in the United States; at no time prior to 2014 had Defendant manufactured or otherwise acquired ownership to the rights to the SEFAC Mark.

26.     In late 2006, however, Defendant sought to obtain ownership of the SEFAC Mark registration by filing a purported assignment with the USPTO.

27.     On or about October 11, 2006, Defendant filed a five-page document which appeared to be a highly redacted and incomplete version of the July 11, 2005 shareholder sale agreement with the USPTO.  A copy of the October 11, 2006 filing is attached hereto as Exhibit C.

28.     Upon information and belief, Defendant deliberately redacted the purported assignment document in order to conceal the true nature of the transaction, and to fraudulently cause the USPTO to believe that Triapt, the owner of the SEFAC Registration, had assigned its rights in the registration to Defendant.

29.     The document filed by Defendant contains no statement whatsoever evidencing any intent to assign the mark to Defendant.  In fact, no such assignment was ever made.  The document is therefore not sufficient to legitimately provide the basis for assignment of the Registration to Defendant, and the Defendant was at all relevant times fully aware that the document was not sufficient.

30.     On or about November 17, 2009, Defendant committed further fraud on the USPTO by causing to be filed a Declaration of Use and Incontestability under §§ 8 and 15 in connection with the SEFAC Registration.  The document was signed by Mr. Allister Collings, the Defendant's President.  In the declaration, Mr. Collings declared that "[t]he mark is in use in commerce on or in connection with the goods and/or services identified [in the registration]."  A copy of Defendant's November 17, 2009 filing is attached hereto as Exhibit D.

31.     Defendant filed with the Declaration a specimen consisting solely of an image of the product manufactured by SEFAC S.A. and shipped by SEFAC S.A. to the Defendant for resale in the United States.  (See Exhibit D).

32.     Upon information and belief, Defendant and Mr. Collings knew that Defendant was not, at any time prior to November 17, 2009, the source of any of the items listed in the SEFAC Registration, but only a distributor of products sold to it and manufactured by or on behalf of SEFAC S.A.

33.     Defendant's filing of the Declaration of Continued Use and Incontestability constituted fraud on the USPTO by making of knowingly false and material misrepresentations regarding the alleged use of the mark as of the filing date of the Declaration.

34.     On or about October 15, 2013, Defendant filed a Declaration of Continued Use under §§ 8 and 9 in connection with the renewal of the SEFAC Registration.  A copy of Defendant's October 15, 2013 filing is attached hereto as Exhibit E.  Upon information and belief, Defendant knew that the Declaration was false because Defendant was not the true owner of the registration at any time.

35.     Defendant's filing of the Declaration of Continued Use on or about October 15, 2013 constituted fraud on the USPTO by making knowingly false and material misrepresentations regarding the alleged use of the mark as of the filing date of the Declaration.

**D.      Defendant Terminates Its Distribution Agreement And Misappropriates and Infringes The SEFAC Marks**

36.     In late 2014, Defendant suddenly and without notice unilaterally terminated its distribution arrangement with Plaintiff.  As a result, Defendant ceased purchasing genuine SEFAC product from SEFAC S.A.

37.     Left without a U.S. distributor, SEFAC S.A. incorporated SEFAC USA Inc. on or about November 13, 2014 to assume the distribution formerly handled by Defendant for SEFAC S.A. products in the United States.

38.     The termination of the distribution agreement notwithstanding, Defendant has continued to purport to sell products and services using the SEFAC Marks.

39.     Defendant has continued to market its goods and services as though it had always been the manufacturer and/or authorized distributor of these products.  In particular, Defendant maintains a website at www.sefac.com, which utilizes the SEFAC Mark, on which it misrepresents that it is the same as SEFAC S.A., by misappropriating the name and history of SEFAC S.A., even though Defendant was not incorporated until March 2001.  The main page of the website states:

> SEFAC's history dates back to the late 1880s but our entry into heavy duty mobile lifts began in 1968 when we designed our first prototype. We started operations in the United States in 1976 and were the first mobile lift company to obtain third party certification by the Automotive Lift Institute (ALI) standard. In 2005, SEFAC became a privately owned US corporation after nearly 30 years of European ownership. We have been a market leader since the early 70's and our lifts have an enviable reputation founded on their long service life, reliability, affordability and above all - their inherent safety. All SEFAC lifts feature a unique and patented electromechanical, self-locking design, based on an Acme threaded screw and a bronze load nut.

40.     Defendant's website uses images of SEFAC S.A. products, and, upon information and belief, Defendant also uses SEFAC S.A. images and information in its other advertising and communications with customers and prospective customers.

41.     Upon information and belief, Defendant has continued to use the SEFAC Marks without authorization for sale in connection with products and services that do not originate with SEFAC S.A. for the purpose of trading upon SEFAC S.A.'s goodwill and rights, and in order to deceive customers into believing that they are purchasing genuine SEFAC S.A. product.

42.     Defendant's unauthorized use of the SEFAC Marks is causing actual confusion in the marketplace, and has deceived several customers and prospective customers of Plaintiff's products into believing that Defendant was the origin and source of genuine SEFAC S.A. products.  As the result of Defendant's unauthorized use of the SEFAC Marks, on information and belief, customers have purchased products purportedly bearing the SEFAC Marks, which products were not genuine SEFAC S.A. products.

43.     In or about June 2015, Weir Construction contacted SEFAC S.A. to inquire concerning the purchase of spare parts for its SEFAC lifts.  However, before SEFAC S.A. had even responded with pricing information, Defendant had made contact with the customer and sold it parts.  Upon information and belief, the parts that Defendant sold to this customer were not genuine product manufactured by SEFAC S.A.  Weir Construction, however, believed that Defendant was SEFAC S.A. or affiliated with SEFAC S.A., and that it was purchasing genuine SEFAC parts.

44.     Earlier in 2015, another customer, Camerota Truck Parts, purchased a new lift from Defendant.  Upon information and belief, Camerota Truck Parts believed that the lift it purchased was a genuine product manufactured by SEFAC S.A., and that Defendant was SEFAC S.A. or affiliated with SEFAC S.A.

45.     Also earlier in 2015, the Southeastern Pennsylvania Transportation Authority ("SEPTA"), based in Philadelphia, contacted Defendant with inquiries concerning the repurchase of certain vehicle lift equipment.  Upon information and belief, SEPTA believed that Defendant was SEFAC S.A. or affiliated with SEFAC S.A., and that Defendant has the authority to make representations on behalf of SEFAC S.A.

46.     Defendant's unauthorized use of the SEFAC Marks and its continued misrepresentations of itself as the manufacturer of such products is likely to cause confusion with genuine SEFAC S.A. products sold by SEFAC USA Inc., and violates the Lanham Act and constitutes unfair competition and misappropriation under federal, Pennsylvania and common law.

## FIRST CAUSE OF ACTION
## CANCELLATION OF FEDERAL TRADEMARK
## (15 U.S.C. § 1119)

47.     SEFAC S.A. repeats and realleges the allegations of paragraphs 1 through 46.

48.     On or about May 11, 2004, the USPTO issued the Registration for the mark SEFAC (Registration No. 2,840,695) to Triapt.

49.     The registration is for: "Heavy garage equipment, ... stands for hydraulic jacks, ... electro-mechanical hoists and lifts for land vehicles; motorized hydraulic elevator tables; hydraulic-elevators; hydraulically and otherwise powered jacks for vehicles; tools as elements of machines for removal of wheels, namely, jacks and wrenches; ... machine shop cranes, namely, power-operated lifts and hoists" in International Class 007.

50.     On or about October 11, 2006, Defendant fraudulently filed with the USPTO an altered document purporting to assign the Registration to Defendant.

51.     On the basis of this filing, the USPTO assigned the Registration to Defendant.

52.     The fraudulently filed document did not properly confirm or establish any assignment of the rights to the Registration to Defendant.

53.     Upon information and belief, no such assignment of the Registration to Defendant was ever made.

54.     On or about November 17, 2009, Defendant knowingly caused to be filed a false Declaration of Use and Incontestability under §§ 8 and 15.   In the Declaration, Defendant's President declared that the "mark is in use in commerce on or in connection with the list of good set out in the registration" and attached a specimen consisting solely of images of the product manufactured by SEFAC S.A. and shipped to the Defendant for resale in the United States.

55.     Upon information and belief, Defendant knew the Declaration to be false when filed and knew that Defendant was not the owner of the mark as indicated in the filing. Defendant's filing of the Declaration was a fraud upon the USPTO.

56.     On or about October 15, 2013, Defendant knowingly filed a Declaration of Use under §§ 8 and 9 for purposes of renewing the Registration.   Upon information and belief, Defendant knew that the Declaration was false because Defendant was not the true owner of the registration at any time.   Defendant's filing of the Declaration was a fraud upon the USPTO.

57.     Defendant's actions in filing knowingly false documents with the USPTO for the purpose of obtaining and maintaining the Registration subjects the Registration to cancellation pursuant to 15 U.S.C. § 1064(3) and 15 U.S.C. § 1119.

58.     The SEFAC Mark covered by the Registration is identical to the SEFAC Mark owned by Plaintiff by virtue of its sales of products containing the mark in the United States for almost forty years.

59.     Defendant's use of the mark "SEFAC" is likely to cause confusion with the SEFAC Mark.

60.     Defendant's registration of the "SEFAC" mark, unless cancelled, may block or interfere with SEFAC's efforts to obtain registrations for the SEFAC Mark and variations of the SEFAC Mark.

61. SEFAC S.A. is likely to suffer damage from the continuing registration of the "SEFAC" mark.

62. By virtue of SEFAC S.A.'s ownership of the SEFAC Mark in commerce, SEFAC S.A. has standing to assert a claim for cancellation of the "SEFAC" registration.

63. By reason of the foregoing, SEFAC S.A. is entitled to an order directing the Director of the USPTO to cancel the "SEFAC" mark as the result of SEFAC S.A.'s prior use of the SEFAC Mark in commerce.

## SECOND CAUSE OF ACTION
## FALSE DESIGNATION
## OF ORIGIN (THE "SEFAC MARK")
## (Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

64. SEFAC S.A. repeats and realleges the allegations of paragraphs 1 through 63.

65. SEFAC S.A. owns all rights to the SEFAC Mark, which has been used continuously and uninterrupted in commerce in the United States since at least about 1977.

66. SEFAC S.A. has filed two prior use trademark applications to register the SEFAC Mark with the USPTO (Serial No. 86454978 and Serial No. 86456432), which applications remain pending.

67. As a consequence of SEFAC S.A.'s long history and reputation manufacturing and selling its lift products, and SEFAC S.A.'s substantial advertising, marketing and promotional efforts, among other factors, and its consistent use of the SEFAC Mark in these efforts, the SEFAC Mark has acquired substantial goodwill and is well-recognized by the public generally and in the lift industry in particular.

68. SEFAC S.A. had previously authorized Defendant to use the SEFAC Mark in connection with Defendant's activities in distributing product manufactured by Plaintiff in the

United States – namely, in Defendant's resale of product that it purchased from SEFAC S.A. for the purposes of distribution.

69.     Defendant unilaterally terminated its distribution agreement with SEFAC S.A. in late 2014.

70.     Defendant's termination of the distribution agreement left SEFAC S.A. without a U.S. distributor.  Accordingly, SEFAC S.A. incorporated SEFAC USA Inc., a wholly owned subsidiary, which now distributes the SEFAC S.A. product as a licensee and exclusive distributor.

71.     Upon information and belief, Defendant has, since terminating the distribution agreement, continued to use the SEFAC Mark and in connection with goods and services sold in the United States.

72.     SEFAC Inc. has, since terminating the distribution agreement, continued to market products using the SEFAC Mark through its website at the domain www.sefac.com, which domain name also utilizes the SEFAC Mark.

73.     SEFAC S.A. has not authorized Defendant to continue to use the SEFAC Mark or any similar mark thereto subsequent to the termination of the distribution agreement.

74.     Defendant's continued unauthorized use of the SEFAC Mark is causing actual confusion and is likely to continue to cause confusion in the future.

75.     Defendant has also continued to misappropriate and misrepresent that it has been the manufacturer and/or source of the lifts sold by Defendant under the SEFAC Mark.  Upon information and belief, Defendant has, through its website and marketing, represented to customers and prospective customers that it is the same as SEFAC S.A. and that it has been the manufacturer of SEFAC products for decades.

76.     Defendant's use of the SEFAC Mark in connection with lift products and services is a false designation of origin, false representation and/or false description which is likely to cause confusion to the relevant public and consumers by falsely suggesting a continued affiliation, sponsorship, association or other continued connection between Defendant and SEFAC and/or their respective products and services.

77.     On information and belief, Defendant's actions demonstrate an intentional, willful and/or malicious intent to trade on the good will associated with the SEFAC Mark to Plaintiff's irreparable injury.

78.     By reason of the foregoing, Defendant's continuing wrongful use of the SEFAC Mark has caused and, unless enjoined, will continue to cause substantial, irreparable injury and damage to SEFAC in an amount to be determined at trial.

79.     Plaintiff is, by virtue of the foregoing conduct, entitled to injunctive relief as well as treble monetary damages, costs and reasonable attorney's fees.

## THIRD CAUSE OF ACTION FOR
## INJURY TO BUSINESS REPUTATION
## AND TRADEMARK DILUTION
## (54 Pa. Cons. Stat. § 1124)

80.     SEFAC S.A. repeats and realleges the allegations of paragraphs 1 through 79.

81.     SEFAC S.A. is one of the most reputable producers of mechanical column lifts in the world.  It has sold its products for more than four decades and currently distributes in some forty different countries.

82.     The SEFAC Mark, which has been in use in commerce in the United States since at least 1977, is strong, distinctive and well-known and famous within the meaning of the statute.

83.     The SEFAC Mark is closely associated with the high-quality, innovative lift products that are used in the United States and around the world, as well as the services provided by SEFAC through its partners.

84.     Defendant's unauthorized use of marks that are substantially identical, and thus confusingly similar, to the SEFAC Mark and which infringe on SEFAC S.A.'s rights has caused and, unless enjoined, will continue to cause dilution by blurring and/or dilution by tarnishment of the distinctive quality of the SEFAC Mark in violation of Pa. Cons. Stat. § 1124.

85.     SEFAC's products are subjected to a rigorous manufacturing and inspection protocol that ensure that each product meets SEFAC's superior standards and high quality controls.  SEFAC's quality controls ensure the integrity and quality of the product that bears the SEFAC Mark.

86.     SEFAC's quality controls are essential to ensuring the quality of the product. Product failure would implicate issues of health and safety, and would be severely damaging to SEFAC's reputation.

87.     Defendant's unauthorized use of the SEFAC Marks in connection with products and services not originating from SEFAC S.A. and of questionable or inferior quality will confuse purchasers and cause substantial and irreparable injury to SEFAC S.A.'s reputation in the marketplace.

88.     On information and belief, Defendant has at all relevant times been aware of the SEFAC Mark and SEFAC S.A.'s ownership of the SEFAC Mark, and Defendant's infringement was done willfully and in bad faith.

89.     By reason of the foregoing, Defendant has caused and, unless enjoined, will continue to cause substantial irreparable injury and monetary damage to SEFAC S.A. in an amount to be determined at trial by virtue of its infringement of the SEFAC Mark.

90.     SEFAC S.A. is, by virtue of the foregoing conduct, entitled to injunctive relief as well as monetary damages, costs and reasonable attorney's fees.

**FOURTH CAUSE OF ACTION**
**COMMON LAW UNFAIR COMPETITION**

91.     SEFAC S.A. and SEFAC USA Inc. repeat and reallege the allegations of paragraphs 1 through 90.

92.     Defendant's unfair competition includes, without limitation, (i) passing off goods or services of Plaintiffs as its own, (ii) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services provided by Defendant, (iii) causing likelihood of confusion as to affiliation, connection, association or certification of its goods and services by or with Plaintiffs, and/or (iv) representing that goods or services have sponsorship or approval of Plaintiffs.

93.     Upon information and belief, Defendant has, through its website and marketing, represented to customers and prospective customers that it is the same as SEFAC S.A. and that it has been the manufacturer of SEFAC products for decades, for the purpose of deceiving consumers and falsely suggesting an affiliation, sponsorship, association or other connection between Defendant and SEFAC and/or their respective products and services.

94.     Upon information and belief, Defendant has, through its website and marketing, represented to customers and prospective customers that it continues to be affiliated with SEFAC S.A. for the purpose of deceiving consumers and falsely suggesting that it, rather than SEFAC USA Inc., is providing services in connection with products of SEFAC S.A.

95.     Defendant has misappropriated the SEFAC S.A.'s valuable reputation, good will and property interest in the SEFAC Mark, for, among other things, the purpose of deceiving consumers and obtaining profit at the expense of these consumers as well as at the expense of SEFAC S.A. as the owner of the rights to the SEFAC Mark and SEFAC USA Inc. as licensee of the SEFAC Mark.

96.     Defendant's foregoing conduct constitutes common law unfair competition.

97.     By reason of the foregoing, Defendant has caused and, unless enjoined, will continue to cause substantial irreparable injury and monetary damage to SEFAC S.A., as the owner of these rights, and to SEFAC USA Inc., as the exclusive licensee and distributor of products bearing the SEFAC Mark in the United States, in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand judgment:

a.      Ordering that the Director of the USPTO cancel the federal registration, Reg. No. 2,840,695, for the mark "SEFAC";

b.      Preliminarily and permanently enjoining Defendant, its officers, agents, servants, parents, subsidiaries, affiliates, employees, attorneys, and representatives and all those in privity or acting in concert with Defendant from, directly or indirectly:

(1)     using, promoting, marketing, advertising or displaying any trade name, trademark, service mark, or other indication of source or origin the mark, designation, the word "SEFAC" or any other trade name, trademark, service mark, or other indication of source or origin that is confusingly similar to or constitutes a copy or colorable imitation of Plaintiff's SEFAC Mark;

(2)     using, promoting, marketing, advertising or displaying any product or service using the web domain www.sefac.com or any other domain that uses as any part of its name the SEFAC Mark or any trade name, trademark or service mark that is confusingly similar to the SEFAC Mark;

(3)     making or displaying any statement or representation that is likely to lead the public to believe that Defendant's services are in any manner,

licensed, sponsored, endorsed, approved, authorized by or associated, affiliated or otherwise connected with Plaintiff;

(4)     engaging in any activity constituting unfair competition with Plaintiff or constituting an infringement on Plaintiff's SEFAC Mark;

(5)     aiding, assisting or abetting in doing any act prohibited by subparagraphs (1) through (3).

c.     Awarding Plaintiffs the following:

(1)     all damages sustained by Defendant's violations of the Lanham Act and that such amount be trebled pursuant to 15 U.S.C. § 1117;

(2)     all monetary damages sustained as the result of Defendant's violation of 54 Pa. Cons. Stat. § 1124;

(3)     statutory damages as may be awarded under 15 U.S.C. § 1117;

(4)     all profits wrongfully obtained by Defendant's above-described wrongful conduct;

(5)     interest on the foregoing sums; and

(6)     reasonable attorneys' fees, costs and expenses incurred by Plaintiff in connection with the action together with Plaintiff's costs and disbursements as allowable by applicable law including without limitation 15 U.S.C. § 1117, 54 Pa. Cons. Stat. § 1124, 73 Pa. Cons. Stat. § 201-9.2.

d.     Such other and further relief as this Court may deem just and proper.

Dated: Philadelphia, Pennsylvania
June 17, 2015

BROWN WYNN MCGARRY NIMEROFF LLC

By: _Mary C. Brown_____
Mary C. Brown, Esq.
Two Commerce Square
Suite 3420
2001 Market Street
Philadelphia, PA 19103
(267) 861-5330
(267) 350-9050
mkbrown@bwmnlaw.com

-and-

Barry G. Magidoff *(pro hac to be filed)*
SUTTON MAGIDOFF LLP
909 Third Avenue
New York, NY 10022
(212) 584-1990
(212) 202-5199

Alvin C. Lin, Esq. *(pro hac to be filed)*
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022
(212) 735-8600
(212) 735-8708 (fax)
alin@morrisoncohen.com

*Attorneys for Plaintiff*